**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| KEISHLA ROLÓN RIVERA, ET AL., | CIVIL NO. 06-2151 (DRD) |
| Plaintiffs | |
| V. | ADA and Rehabilitation Act claims for discrimination and reprisals; PR Law 44 and General Tort supplemental causes of action |
| THE PUBLIC BROADCASTING CORPORATION OF PUERTO RICO | |
| (WIPR RADIO AND TV) | JURY TRIAL REQUESTED |
| Defendant. | |

<u>**AMENDED OPINION AND ORDER**</u>

Pending before this court is Defendant's *Motion for Summary Judgement* pursuant to Federal Rule of Civil Procedure 56 (c)(Docket No.19) together with the *Statement of Undisputed Material Facts* (Docket No. 20), *Plaintiff's Response in Opposition to Motion for Summary Judgement* (Docket No.27), and *Defendant's Reply to Plaintiff's Response in Opposition to Motion for Summary Judgement.*(Docket. 36). The Complaint alleges claims of employment discrimination pursuant to the Equal Opportunity for Individuals with Disabilities, American with Disabilities Act, 42 USC 1201 et seq., ("ADA") and under the Rehabilitation Act of 1973, 29 USC 7943 . Plaintiffs seek compensatory damages, back pay, interest on the back pay, reinstatement or in the alternative front pay, punitive damages, attorneys fees and the reimbursement of litigation costs.

For the following reasons, Defendant's motion for summary judgement is **GRANTED**.


I. **Factual Background**


In the instant case, the Plaintiffs are Keishla Rolón Rivera, and her husband, Andres Ortiz Miranda,. Defendant, the Public Broadcasting Corporation of Puerto Rico ("PBCPR"), also known as WIPR Radio TV, Channel 6, is a public corporation created by a statute of the Commonwealth of Puerto Rico, which operates and administers the television station identified as WIPR in San Juan and WIPM in Mayaguez, and the radio stations identified as 91.3 FM and 940 AM.

Rolón suffers from a condition known as Spinal Muscular Atrophy Type III (SMA), a type of muscular dystrophy where the motor neurons affect the voluntary muscles used for activities such a crawling, walking, the control of the neck, head, and for swallowing. SMA affects the muscles throughout the entire body, although the muscles closest to the body's torso, such as the shoulders, hips and back, are the most affected. In Rolon's particular condition the muscle weakness is more prevalent in the legs than in the arms. The condition causes Rolón to become tired while performing simple tasks and her mobility is achieved with a motorized scooter. Plaintiff Rolón, from October 1995 to February 2005, provided services to the PBCPR as a collaborator of the Arts and Culture segment in the news department.

Plaintiff Rolón is married to co-plaintiff Andres Ortiz Miranda. In 1994, Rolón obtained a Bachelor's Degree in Education with a major in English as a second language from the University of Puerto Rico. On October 20, 1995, Rolón began to work with PBCPR as collaborator of the Arts and Culture segment in the news department. Rolón worked with PBCPR as a collaborator in a one-year or six-month contractual basis from 1995 to 2005. Rolón also had separate contracts with PBCPR to work as TV Hostess of two television programs: "Habla La Juventud" and "Nosotros.TV". On February 9, 2005, Rolón sent a letter to Torres, Director of News Department notifying her intentions to terminate her contractual relationship with PBCPR. On February 11, 2005, Rolón terminated her professional services contract as collaborator of the newscast with PBCPR.

Rolón applied and interviewed for the job with the Puerto Rico Senate before she cancelled her professional services contract with PBCPR. On September 12, 2005, Rolón filed a charge of disability discrimination against the PBCPR before the Antidiscrimination Unit of the Puerto Rico Department of Labor. (Docket Nos. 16 and 19). From March 2005 to December 2006, Rolón worked as an English teacher for the "Centro de Desarollo Infantil" of the Puerto Rico Senate.

In December 2006, Rolón resigned her job with the Puerto Rico Senate because she received an offer of employment with the Municipality of Carolina.

Plaintiff later began working with the Municipality of Carolina in January 2007. Since January 2007, Rolón has been working as Press Advisor at the Press and Communications Office of the Municipality of Carolina. On November 17,2006 Plaintiff Rolón filed the instant case's Complaint.

## II. Uncontested Facts

1. "In November 1995 Rolón met with then president of defendant corporation, Mr. Jorge Iserni, who then notified that due to budget considerations the acquisition of the promised vehicle had been detained."(See Docket No.1 ¶16)

2. "In 1996 the production assistant, Ms. Maria Eleno Bravo, informed Rolón that due to her work volume she could no longer accompany plaintiff to the street with [a] cameramen."(See Docket No.1 ¶18)

3. "During the month of July, 1996, Plaintiff asked the Information's Chief, Ms. Hortensia Ramos, that Mr. Angel Nieves be assigned as her cameraman, since he knew how to assist her with [her] physical condition. Ms. Ramos informed Plaintiff that [a] cameramen were [sic] assigned pursuant to the work needs, but as long as Nieves was available, he would be assigned to Plaintiff."(See Docket No.1 ¶25)

4. "In 1996, while still at the "Habla La Juventud" television program, Plaintiff requested a compensation revision and Mr. Inserni

4

authorized a monthly increment of $200.00, approximately."(See Docket No.1 ¶26)

5. "Furthermore, despite the additional responsibilities, for the July 2001 contract Plaintiff noticed that her work schedule had been reduced from 35 to 25 hours a week, and that her salary had also been reduced in approximately $1.00 per hour. Plaintiff thus requested a meeting with Ms. Nora Soto who informed [her] that she believed that Rolón could perform the same work in less hours and in this manner money could be saved in the news department for other priorities."(See Docket No.1 ¶32)

6. "For the September 11, 2001 crisis, Plaintiff was assigned to report at 6:30 in the morning on a daily basis. Plaintiff thus started to work in excess of the contracted hours without receiving any economic compensation. Although Ms. Soto indicated that the situation was temporary, numerous additional tasks were assigned to the Plaintiff."(See Docket No.1 ¶34)

7. "Then in 2002, after seven consecutive years, plaintiff's section in the news program, "Nueva Actitud", was cancelled. Plaintiff was informed that from then on she would not have a production assistant, that she had to perform and coordinate all activities on her own,

including the assignment of cameramen and the submission of petitions in advance."(See Docket No.1 ¶37)

8. "In 2003 plaintiff Rolón was the reporter with the highest amount of assigned work and Angel Nieves, who usually accompanied Rolón, complained about the amount of daily assignments. Ms. Parilla attended to Nieves' complaint by starting a rotation of cameramen assigned to plaintiff Rolón, but did not reduce nor adjust the amount of work assigned to Plaintiff."(See Docket No.1 ¶39)

9."During 2004 the cameramen Jorge Negrón, Miguel Rosa and Angel Nieves met with the Information's Desk to complain about plaintiff's work conditions. They said that management appeared to be engaged in a discrimination and undue hardship agenda in order to pressure and force plaintiff's resignation. However, Rosa Julia Parrilla simply laughed and asked them not to talk about the situation. Then a position as Writer opened and plaintiff requested it. Rolón met with Ms. Rebecca Torres to indicate that she needed a position that would not be physically exhausting and was thus requesting the writer position. Ms. Torres informed plaintiff that she would be considered. However, Plaintiff received a notice from Defendant which stated that she did not qualify for the position due to educational requirements and the lack of employment verification."(See Docket No.1 ¶¶¶ 47-49)

61. "On February 8, 2005 Rolón met with Ms Rebecca Torres regarding plaintiff's resignation effective February 14, 2005. Ms. Torres accepted Rolon's resignation and indicated that she recognized that the work conditions were not the best for Plaintiff but "regretfully, there was nothing she could do". That same day Plaintiff was assigned five additional interviews, [which she agreed to perform and was remunerated therefore], and [therefore] the resignation date was moved forward to February 11, 2005."(See Docket No.1 ¶ 1); *Emphasis ours*.

## II. Standard for Summary Judgement

The framework of Fed.R.Civ.P. 56 provides that it is appropriate to enter summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). *See* Celotex Corp v. Catrett, 477 U.S. 317, 324-25, 106 S.Ct. 2548, 2553-54 (1986); Abbadessa v. Moore Business Forms, Inc., 987 F.2d 18, 22 (1st Cir. 1993). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," *and* that he is "entitled to judgment as a matter of law." Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997). When the moving party asserts that the competent evidence

clearly demonstrates that it is entitled to judgment and after the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortes-Irizarry v. Corporacion Insular, 111 F.3d 184, 187 (1st Cir. 1997).

At the summary judgment stage, the trial court examines the entire record "in the light most flattering to the non-movant and indulges all reasonable inferences in that party's favor. Only if the record, viewed in the manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Company v. Hayes, 116 F.3d 957 at 959-60 (1st Cir. 1997). In other words, the court must construe the record and all reasonable inferences from it in favor of the non-movant (the party opposing the summary judgment motion). *See* Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000); Cortes-Irizarry, 111 F. 3d at 187; *see also* United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Moreover, "[i]f the adverse party does not [file an opposition], summary judgment, **if appropriate**, shall be entered against the adverse party." Fed.R.Civ.P. 56(e) (*emphasis ours*). The First Circuit Court of Appeals has made pellucid that failure to timely oppose a motion for summary judgment, does not, in itself, justify entry of summary judgment against the party; therefore, a District Court is "obliged to consider the motion on the merits, in light of the record as constituted, in order to

8

determine whether judgment would be legally appropriate." Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991); *see also* Lopez v. Corporacion Azucarera de Puerto Rico, 938 f.2d 1510, 1517 (1st Cir. 1991) (holding that before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law). In the case of failure to oppose a motion for summary judgment, the consequence "is that the party may lose the right to file an opposition." *See* Mullen v. St. Paul Fire & Marine Ins. Co., 972 F.2d 446, 451-52 (1st Cir. 1991) (discussing unopposed motion for summary judgment). Finally, **a party that fails to oppose a motion for summary judgment, does so at its own risk and peril**. *See e.g.* Corrada Betances v. Sea-Land Services, Inc., 248 F.3d 40, 43 (1st Cir. 2001); Herbert v. Wicklund, 744 F.2d 218, 233 (1st Cir. 1994). However, notwithstanding that there is no opposition to a summary judgement, the Court must entertain the motion on the merits and may not grant the same as a sanction even for failure to file an opposition. *See* De la Vega v. San Juan Star, 377 F. 3d 111(1st Cir., 2004).

## IV. Analysis

### A. ADA claims under federal law

ADA requires a plaintiff to exhaust the administrative remedies prior to suing in federal court. Bonilla v. Mueblería J.JAlvarez,

Inc., 194 F. 3d,275,278 (1ˢᵗ Cir. 1999) ; Lawton v. State Mutual Life
Assurance Co. of America, 101 F.3d 218, 220-21 (1ˢᵗ Cir. 1996).

In fact, 42 U.S.C. Section 2000e-5(e), in pertinent part states
that a charge is to be filed with te EEOC "within one hundred and
eighty days after the alleged unlawful employment practice occurred"
or within three hundred days if "the person aggrieved has initially
institutionalized proceedings with [an authorized] State or local
agency."

Plaintiff Rolón filed the complaint with the Anti-discrimination
Unit of the Puerto Rico Department of Labor and Human Resources in
September 12 , 2005.(Docket No. 19 Exhibit 16) Since the complaint
was filed in a state deferral agency, the 300-day  statute of
limitations applies. See National R.R Passenger Corp v. Morgan, 536
U.S. 101, 122 S.Ct. 2061, (U.S 2002).

> A discrete retaliatory or discriminatory act
> "occurred" on the day that it "happened." A
> party, therefore, must file a charge within
> either 180 or 300 days of the date of the act
> or lose the ability to recover for it.

The last discrete "alleged" discrimination occurred on June 28,
2004 after Defendant denied Plaintiff's application for a permanent
position. (Docket No. 22 Exhibit 5). The Court will hypothetically
take this last allegation to be true as to be more favorable to
Plaintiff. We agree with the Defendants insofar Plaintiff had until
June 2005 to file the discrimination charge with the EEOC. As stated
above, Plaintiff filed said EEOC related administrative charge on

10

September 12, 2005; that is approximately a hundred days past the 300-day prescribed time limit for filing the administrative complaint. Therefore, Plaintiff failed to exhaust the administrative remedies in a timely manner, and therefore Plaintiff's claim for the allegedly discriminatory acts under the ADA are time barred.

Notwithstanding, Plaintiffs aver that "until the day of resignation plaintiff complained about her working conditions and sought a resolution through reasonable accommodations"(Docket No. 27). Plaintiff is indirectly stating that discriminatory incidents did occur after the aforementioned denial of employment letter dated June 28, 2004. Under this factual scenario, the EEOC complaint would not exceed the 300-day statute of limitations; and consequently, her ADA claim would prosper.

However, "Plaintiffs base their argument solely in a statement made by Rolón during her deposition– with no specificity to an act or when it occurred– with the sole purpose of trying to establish that she complained about her working conditions and sought a resolution through reasonable accommodation up to the day of her resignation." (See Docket No. 36) Said statement is the following:

> "I said before that it was a behavior, and that is .. Sometimes you say things and sometimes you say things, and it does not have to do with words, or it does not have to do with specific actions, but you can feel when somebody likes you and you can feel when somebody dislikes you, and by the day I resigned I honestly felt less of a person, I felt ... maybe for the first time in my life,

that I was truly handicapped. I questioned my abilities. I... I try to compensate for every obstacle that I was given. And by that time I believed it was my responsibility to... to do whatever it takes from my side to do it. I honestly believe it was my fault if thing were not working as I wanted or as the Channel(sic) ... I felt terrible every time I said, "I am tired", I felt like I was whining, like I was complaining for no reason. So for me... more about meetings, letters, I was hoping for some changes and some action, some sympathy or empathy, I do not know, towards my condition and toward what I felt. And I got mad because I knew I could do better, but it was not my fault. I know if I... if they could see all the options that I gave them to make a better job, I give them a lot, lot better in terms of what I showed in my packages and in my research and my interviews and my.... and my passion that was my job. I just wanted to say that."(Rolón depo II, p.56, In. 2 to p.57, In. 2, Exhibit X).

While the court is moved by Plaintiffs's heartfelt and stirring recollection, said passage not only lacks any allusion to a date, time or place; but it also fails to offer any factual evidence that would compel a reasonable fact finder to determine the existence of a hostile work environment . Indeed, Plaintiffs base their argument in a conclusive fashion of a hostile work environment to sustain the discriminatory practices. Since a hostile work environment claim "cannot be said to occur on any particular day"; "the actionable wrong is the environment, not the individual acts that, taken together, create the environment". Ledbetter v. Goodyear Tire & Rubber Co.,Inc. 127 S.Ct 2162 (U.S 2007) citing National R.R

Passenger Corp v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, (U.S 2002).
If, in fact Plaintiffs succeed in proving the existence of a hostile
work environment that occurred after the last alleged discrete
discriminatory practice(denial of job), then "a charge alleging a
hostile work environment claim, will not be time barred so long as
all acts which constitute the claim are part of the same unlawful
employment practice and at least one act falls within the time
period." Morgan supra.

Plaintiffs cite recent First Circuit rulings---albeit dealing
with sexual harassment claims--- in support of their hostile work
environment contention. Plaintiffs rely primarily on Marrero v. Goya
of Puerto Rico, 304 F.3d 7 (1st Cir 2002). Pomales v. Celulares
Telefónica, Inc., 447 F.3d 79 (1st Cir 2006) Johnson v. Spencer Press
of Me., Inc. 364 F.3d 368, 377 (1st Cir. 2004). None of the latter
however, substantially aid Plaintiffs's argument.

In Marrero the Court held that:

> There is no "mathematically precise test" for
> determining when conduct in the workplace
> moves beyond the "merely offensive" and
> enters the realm of unlawful discrimination.
> Harris v. Forklift Sys., Inc., 510 U.S. 17,
> 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).
> Rather, the question whether the environment
> is objectively "hostile or abusive" must be
> answered by reference to "all the
> circumstances," including the "frequency of
> the discriminatory conduct; its severity;
> whether it is physically threatening or
> humiliating, or a mere offensive utterance;
> and whether it unreasonably interferes with
> an employee's work performance." Id. at 23,

> 114 S.Ct. 367. "Subject to some policing at
> the outer bounds," it is for the jury to
> weigh those factors and decide whether the
> harassment was of a kind or to a degree that
> a reasonable person would have felt that it
> affected the conditions of her employment.
> Gorski v. N.H. Dep't of Corrections, 290 F.3d
> 466, 474 (1st Cir.2002).

See 304 F.3d at 18-19.

The facts and circumstances in Marrero are diametrically different from the ones in the present case. There, a secretary was undoubtedly subjected to a hostile work environment by her supervisor. For example, the secretary suffered multiple medically confirmed nervous breakdowns due to evidence of physical and emotional bantering, and was prescribed with antidepressants, tranquilizers, and anti-psychotic drugs. The supervisor "would scold her for no reason, yelling at her in front of other employees." *See* Marrero, 304 F.3d at 14. From the record in the present case, this Court is unable to find that Plaintiff Rodón suffered any emotional or physical bantering by the alleged discriminatory practices leading to a hostile work environment. Nor that Defendant humiliated, scolded or ridiculed Plaintiff even to a small degree that would lead to a hostile work environment.

In Arrieta-Colon v. Wal-Mart Puerto Rico, Inc, 434 F.3d 75 (1st Circuit 2006), the Court provides a pellucid narration of hostile work environment leading to constructive discharge under ADA. There, an employee with a disability was undoubtedly subjected to extreme and despicable acts of discrimination. For example,

14

> [T]here was evidence presented as to the
> **constant mockery and harassment** that Arrieta
> was subjected to **by fellow co-workers and
> supervisors alike due to his condition**; there
> was evidence presented that this harassment
> was constant and unbearable, leading to
> Arrieta's resignation; and there was evidence
> that Arrieta's **supervisors knew about the
> harassing conduct and rather than stop it,
> participated in it.**

See _Arrieta-Colon_, 434 F.3d at 89 (*emphasis ours*).

On the other hand, in the instant case Plaintiff asserts that the failure to provide reasonable accommodations led to a hostile work environment, which in turn led to her constructive discharge. However, as stated hereinbefore, Plaintiff-Rolón fails to offer any evidence(besides the above-mentioned passage at pgs 11-12) that would compel a reasonable fact finder to believe that.

Though Plaintiff Rolón states that she complained about her working conditions until the day of resignation, her resignation letter seems to contradict such state of mind. Plaintiff Rodón stated:

> I appreciate the opportunity of demonstrating
> to many that limitations are only barriers
> that we place on ourselves. Thank you for
> allowing me to be a cause for self-
> improvement of many and of fulfilling my
> mission to prove that there are no goals that
> are unreachable...... I have received
> numerous satisfactions thanks to this
> opportunity. I have grown professionally and,
> even more so, I have been filled with good
> experiences thanks to my co-workers.

(Docket No.22. Exhibit 7)

15

Indeed, Plaintiffs urge this Court to conclude that the passage of Rolón's deposition, see e.g pgs 11-12, "summarized the hostile work environment"(See Docket No.27). Again, this Court, while moved by Rodón's recollection, cannot possibly conclude the existence of a hostile or abusive work environment based on the provided evidence. No reasonable fact finder could conclude that there were facts present at all sufficiently severe or pervasive. See <u>Pomales v. Celulares Telefónica, Inc</u>. 447 F.3d 79 (1st Cir 2006)

> The inappropriate conduct alleged here is similar to conduct which this circuit and others have deemed insufficient to establish a hostile work environment claim. See, e.g., <u>Chamberlin</u>, 915 F.2d at 783 (concluding that it was "highly doubtful" that five sexual advances by a supervisor "could be considered sufficiently severe or pervasive to support a sexual discrimination claim of the hostile environment variety"); <u>Morgan v. Mass. Gen. Hosp.</u>, 901 F.2d 186, 192-93 (1st Cir.1990) (holding that conduct was not sufficiently severe or pervasive where, over two-week period, a coworker stood behind the plaintiff to create physical contact, surreptitiously looked at the plaintiff's genitals in the restroom, and engaged in unwanted touching); <u>Burnett v. Tyco Corp.</u>, 203 F.3d 980, 984-85 (6th Cir.2000) (holding that evidence of a single battery and two offensive remarks over six months did not establish a hostile environment).

See <u>Id.</u>, at 84.

Plaintiff  also avers that she was constructively discharged due to the lack of reasonable accommodations. She primarily alleges that she requested to Defendant a scooter-adaptable car  multiple times.

According to Plaintiff's deposition, the last request was made "sometime around Christmas 2004". Around this time also, Plaintiff requested to be allowed to perform her duties in the studies, and not be obligated to relocate to the street to conduct her reports. (See Docket No. 30 Exhibit No. 21. Line 4-18) With regards to the first request(scooter-adaptable car), in her deposition, Plaintiff states that she asked Ms. Molini for said accommodation, and Ms. Molini replied that "let us see what happens". To cinch matters, Plaintiff voluntarily resigned barely 2 months after (February 11, 2005) said request was made. It is highly relevant to our analysis that the aforementioned "scooter-adaptable car" request was never denied by Defendant---albeit it was not granted either. But even if we held, *in arguendo*, that Defendant in fact denied plaintiff's request for a scooter-adaptable car, **it would be overshadowed if juxtaposed with the numerous accommodations that were in fact granted to Plaintiff.** See discussion *infra*, at pgs. 19-20; s*ee also* <u>Johnson v. Shalala</u>, 991 F.2d 126 (4th Cir. 1993)

> (The consequences of regarding every failure to accommodate an employee as a constructive discharge would be significant. Under this standard, if a plaintiff can prove that the government has violated the Act, she can automatically quit her position without first resorting to the administrative and judicial remedies provided by Congress to mediate these disputes while the employment relationship can still be salvaged. See 29 U.S.C. § 794a(a)(1) (incorporating the provisions for conciliation agreements and equitable remedies available to federal employees

under 42 U.S.C. § 2000e-16 and § 2000e-5(f)
through (k)). In the interval between a
constructive discharge and reinstatement of
the employee, both sides lose.)

As to the second request(which was made up until the day of
resignation) concerning Plaintiff's desire to be allowed to conduct
her reports from inside the studio, this Court does not recognize
that the failure to meet said accommodation could hamper Plaintiff's
health to the extent that it would reverberate in a situation so
unbearable that would leave Plaintiff no other option but to resign.
See Smith v. Henderson, 376. F.3d 529, 537-538 (6th Cir. 2004)[1]

**(Assuming that Smith was denied a reasonable
accommodation that forced her to work well in
excess of her medical restrictions, a jury
reasonably could infer that the USPS (through
Mullin) knew that Smith's working conditions
would become intolerable to a reasonable
person suffering from her particular**

---

[1]The Standard for a constructive discharge in this circuit was
well set in Lee-Crespo v. Schering-Plough del Caribe Inc., 354 F. 3d
34, 45 (1st Cir. 2003):

> To prove constructive discharge, a plaintiff
> must usually "show that her working conditions
> were so difficult or unpleasant that a
> reasonable person in [her] shoes would have
> felt compelled to resign." *Marrero v. Goya of
> P.R., Inc.*, 304 F.3d 7, 28 (1st Cir.2002)
> (internal quotation marks omitted); see
> *Melendez-Arroyo v. Cutler-Hammer de P.R. Co.*,
> 273 F.3d 30, 36 (1st Cir.2001). The standard
> is an objective one; an employee's subjective
> perceptions do not govern. *Marrero*, 304 F.3d
> at 28; *Suárez v. Pueblo Int'l, Inc.*, 229 F.3d
> 49, 54 (1st Cir.2000). It is not enough that a
> plaintiff suffered "the ordinary slings and
> arrows that workers routinely encounter in a
> hard, cold world." *Suárez*, 229 F.3d at 54.

**disability.** As noted, Mullin rescinded and/or refused to honor Smith's hours-of-work accommodation that had been in place since 1997, denied Smith the reasonable accommodation of delegating her non-essential accounting duties, and forced her to work long stretches of over-forty-hour weeks with few or no days off, resulting in the foreseeable consequence that Smith's health would markedly deteriorate. **Thus, a reasonable jury could conclude that the USPS knowingly and deliberately "turned its back" on Smith and, therefore, the USPS could foresee that Smith would be compelled to quit her job in order to preserve her health.** *Cf.* Johnson v. Shalala, 991 F.2d 126, 132 (4th Cir.1993) (holding that an employee who was provided some, but not all, of the reasonable accommodations she requested, could not quit and sue her employer under a constructive discharge theory, but recognizing **"that a complete failure to accommodate,** in the face of repeated requests, might suffice as evidence to show the deliberateness necessary for constructive discharge"); Hurley-Bardige v. Brown, 900 F.Supp. 567, 573 n. 7 (D.Mass.1995) (noting that a failure to provide a reasonable accommodation could result in a constructive discharge when, for example, an employer "refuse[s] to build a ramp or elevator for an employee confined to a wheelchair, making it **impossible** for the employee to get to work").

(*emphasis ours*).

This court does not accept that the Defendant "turned its back" on Rolón, nor that the failure of granting the above-mentioned requests would compel Rolón to quit in order to preserve her health. Nor has Plaintiff alleged that the refusal to buy the requested car with an adaptable ramp made it impossible for her to actively accomplish her work requirements. Indeed, earlier analysis concluded

that the circumstances surrounding Plaintiff's voluntary resignation do not amount to a hostile environment and/or a constructive discharge. But more importantly, Defendant did provide and complied with Plaintiff's multiple accommodation requests. For example, Defendant conditioned the bathroom to suit Plaintiff's needs; <u>when possible, assigned Nieves as the de-facto cameraman and assistant to Plaintiff and assigned Plaintiff a personal assistant whenever possible; until the end, permitted Plaintiff to work from her home.</u>(See Docket No. 19 Exhibit 1 ¶¶ 21-24) In addition, Rebeca Torres's deposition statement further clarifies Defendant's multiple considerations with Plaintiff.

> Keishla was allowed to work from her home and organize her work agenda at home, do all the contacts from her home, which was contrary to the other collaborators who did have to be present at the nes department and work from the news desk.... Likewise, when she would go out. She would use her vehicle and she was allowed to do so and also bring an assistant with her, in some cases it would be her sister, her mother or her husband... We would provide the camera operator or the camera man that she would request and that would be Angel Nieves, as much as it was within our power we would always do the arrangements for Angel Nieves to go out with her just like she requested. The same thing when she would go in the vehicles of the Corporation, in some cases the camera men would help her move, get into the vehicle and get out of the vehicle.

(Torres' Deposition at Docket No.19  Exhibit 7, page 84, line 5-25; page 85, line 11-11).

Furthermore, in <u>Johnson</u> *supra*, the 4th Circuit recognized that "partial or imperfect accommodations" usually fail to meet the threshold of constructive discharge:

> We recognize that a complete failure to accommodate, in the face of repeated requests, might suffice as evidence to show the d*eliberateness necessary for constructive discharge*. And, of course, deliberateness can always be shown through direct evidence that an employer intended to force an employee from his or her job. However, in this case of *partial or imperfect accommodation* in the context of an employment relationship that was difficult for everyone involved, we do not think that the elements of a constructive discharge have been met.

See <u>Johnson</u>, 991 F.2d at 132 (*emphasis ours*).

In sum, this Court finds that the "deliberateness necessary for constructive discharge" and/or the presence of "intolerable conditions to a reasonable person" are absent in this case. Consequently, the Court finds no indication of constructive discharge as a consequence of Defendant failing to "partially or imperfectly" comply with Rolón's accommodation requests. Therefore the Court considers Plaintiff's last alleged discrete discrimination to have occurred on June 28, 2004. Furthermore, plaintiff does not aver that a continuous violation equitably tolled the limitation period. Consequently, this Court deems unnecessary to review such allegation; and hence, such claim is deemed late and waived. See <u>Zeru v. Gonzales</u>, 503 F.3d 59, 66 n. 4 (1st Cir.2007).

21

The Court concludes that Plaintiffs failed to offer convincing evidence that would lead a reasonable fact finder to conclude the existence of a hostile work environment. In light of these findings, Defendant's claims under ADA exceeded the proscribed statute of limitations period; hence all related ADA claims are time-barred.

## B. Rehabilitation Act & PR Law 44 claims

The Court also finds that Plaintiffs claim under the Rehabilitation Act is time-barred. Unlike the ADA claims, Rehabilitation Act claims do not require the proponent to exhaust administrative remedies. See <u>Brennan v. King</u>, 139 F.3d 258, 268 (1st Cir 1998)

> Unlike the ADA and the Massachusetts statutes, the Rehabilitation Act does not require exhaustion. The Rehabilitation Act derives its procedural requirements from Title VI, which does not have an exhaustion requirement. See <u>Cook v. Rhode Island Dept. of Mental Health, Retardation, and Hospitals</u>, 783 F.Supp. 1569, 1572 (D.R.I.1992), aff'd, 10 F.3d 17 (1st Cir.1993). Accordingly, to the extent that exhaustion is relevant, it does not bear on petitioner's claim under the Rehabilitation Act.

See <u>Id.</u>

Since the Rehabilitation Act does not establish a limitation period, courts have adopted the limitation period of the most analogous state. See <u>Nieves-Marquez v. Puerto Rico</u>, 353 F.3d 108,

118 (1st Cir. 2003) (holding federal claims under the Rehabilitation Act borrow the most analogous statute of limitations from state law); Law 44 (the local disability discrimination statute, which in turn has adopted the one-year statute of limitations from Law 100) See Skidmore v. American Airlines, Inc 198 F.Supp.2d 131 (D.P.R. 2002); see also Olmo v. Young & Rubicam of P.R., Inc., 110 D.P.R. 740 (1981)(Establishing a one year statute of limitations for discrimination in employment cases.)

Plaintiffs claim is dual; it arises both under the Rehabilitation Act and under PR Law 44, which in turn is the most analogous state law. Both claims are mutually inclusive; hence if PR Law 44 claims are time-barred, Rehabilitation Act claims are also time-barred.

In the instant case, the last discrete alleged discriminatory practice occurred in June 2004 when Defendant denied Rolón's job request. We concur with the Defendant to the extent that Plaintiffs had until June 2005 to file their complaint as to the Rehabilitation Act and PR Law 44 Claims. Notwithstanding, the complaint was filed on November 15, 2006. Furthermore, even if the limitations period is measured from the date the AUD claim was filed, September 12, 2005, Plaintiffs would have still had to have filed their complaint on or before September 12, 2006. *See* Cordero-Irizarry v. Sears Roebuck of Puerto Rico, Inc., 553 F.Supp.2d 66, 73 (D.P.R.2007); *see* also Sifre v. Department of

23

Health, 38 F. Supp. 2d 91, 96 (D.P.R. 1999)(*quoting* Leon-Noqueras
v. University of Puerto Rico, 964 F. Supp. 585, 589 (D.P.R.
1997));Vargas v. Fuller Brush Co. Of Puerto Rico, 336 F. Supp. 2d
134, 144 (D.P.R. 2004); Padilla Cintron v. Rossello Gonzalez, 247
F.Supp.2d 48 (D.P.R. 2003)(All standing for the proposition that
even if an administrative charge interrupts the claims, the
limitations period begins to run anew on the day after.)

In light of the above, and Plaintiffs having filed their
Complaint on November 17, 2006, it follows that their claims under
PR Law 44 and the Rehabilitation Act are time-barred. Brennan,
*supra at 268.*

### C. Puerto Rico Tort Claim

Plaintiffs also make a claim under Article 1802, the Puerto
Rico Civil Code's negligence provision. 31 P.R. LAWS ANN.§ 5141.
Defendants assert that this claim is time-barred as well.

Claims under §5141 are claims under Puerto Rico's basic tort
statute which has a one (1) year statute of limitations. *See*
Vargas, 336 F. Supp. 2d at 144; *see also* Marcano-Rivera v. Pueblo
Intern., Inc., 232 F. 3d 245, 254 (1st Cir. 2000). Furthermore,

> the Supreme Court of the Commonwealth of
> Puerto Rico has held that the filing of an
> administrative charge will not toll the
> running of the statute of limitations for a
> tort action, even if the tort arises from the
> same event which gave rise to the
> administrative complaint, because the
> administrative agency ha[s] no jurisdiction
> over tort claims.

*See* Sifre, 38 F. Supp. 2d at 96(*quoting* Leon-Noqueras, 964 F. Supp. at 589; *see also* Vargas, 336 F. Supp. 2d at 144. As discussed hereinbefore ,the present claim was filed well more than a year after the last alleged discrete discriminatory practice. This prescriptive period may be tolled by, among other things, the institution of an action in court. See Skidmore v. American Airlines, Inc. 198 F.Supp.2d 131 (D.P.R. 2002); Tokyo Marine and Fire Ins. Co., Ltd. v. Perez & Cia., De Puerto Rico, 142 F.3d 1, 4 (1st Cir. 1998).

If a plaintiff brings an action more than one year after the injury, he bears the burden of proving that he lacked the requisite "knowledge" within the statutory period. See Santiago Hodge v. Parke Davis & Co., 833 F2d,6,7(1st Cir. 1987). To carry this burden, a plaintiff must establish that (1) he did not have notice of the injury or knowledge of the person who caused the injury; and, (2) that the reason for the lack of knowledge is not negligence or lack of care to acquire the necessary facts. See Alamo v. Manqual Cleaning Services, Inc., 962 F.Supp. 258, 261 (D.P.R. 1997. Fragoso de Conway v. López, 794 F.Supp.49,50 (D.P.R. 1992), aff'd, 991 F.2d 878 (1st Cir. 1993). If Plaintiff fails to meet this burden, the statute of limitations will start to run from the day of the injury regardless of whether plaintiff has actual knowledge. See Vázquez Morales v. Estado Libre Asociado de Puerto Rico, 967 F.Supp 42,46(D.P.R. 1997).

In the instant case, Rolon's husband, Mr. Ortiz, claims damages for mental anguishes, humiliations, and economical hardships allegedly suffered as a result of the asserted discriminatory and damaging actions against Rolón. In the present case Plaintiff unquestionably had knowledge of the alleged discriminatory acts. Said knowledge is manifested in Plaintiff's complaint, wherein the alleged discriminatory acts and grievances appear (See Docket No.1) In light of these facts, Mr. Ortiz's purported tort claim arose, under the most favorable scenario on Feburary 8, 2005, the date Rolón resigned. Thus, the statute of limitations for Ortiz's tort claim began running on that date. Consequently, Mr. Ortiz had until February, 2006 to file their complaint or otherwise extrajudicially interrupt the one-year statute of limitations. The present complaint was not filed until November 15, 2006. Furthermore, even if the limitations period is measured "from the date upon which [Plaintiff] filed her charge before the ADU..., [September 12, 2005], the instant demand for damages, filed [on November 17, 2006], is indeed time-barred." _See_ Cordero-Irizarry v. Sears Roebuck of Puerto Rico, Inc., 553 F.Supp.2d 66, 73 (D.P.R.2007); _see also_ Torres v. Caribbean Forms Mfr., 286 F. Supp. 2d 209, 215 (D.P.R. 2003)

> (In Padilla Cintron v. Rossello, 247 F.
> sUpp.2d 48, 55-56 (D.P.R.2003), this Court
> held that the filing of an administrative
> claim with the Department of Labor or the
> EEOC tolls the applicable statute of
> limitations and suspends the running of the

> prescription term for claims brought under Title VII and Law 100. However, the effect of such an administrative filing is different with respect to claims brought under Article 1802. Id. Instead, while the administrative claim tolls the applicable statute of limitations, it does not prevent the prescriptive term from running anew from the date that the administrative complaint is filed.)

Therefore, it follows that Plaintiff's Article 1802 claim is time-barred.

## V. Conclusion

The Court finds that Plaintiffs Keishla Rolón Rivera and Andrés Ortiz Miranda's claims arising under the ADA, Rehabilitation Act, and under Puerto Rico Tort and PR Law 44 exceeded the proscribed statute of limitations period; and thus are time-barred. As a result, this Court is unable to entertain the instant case.

Hence, PBCPR's Motion for Summary Judgement Pursuant to Federal Rule of Civil Procedure 56 (c), is hereby **GRANTED.** Consequently, the instant case is hereby **DISMISSED with PREJUDICE.** Judgement is to be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 2nd day of September 2008.

                    S/ DANIEL R. DOMINGUEZ
                    DANIEL R. DOMINGUEZ
                    U.S. District Judge

27